USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/11/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM GALLAGHER, on behalf of himself and all others similarly situated,

               Plaintiff,

- against -

EMPIRE HEALTHCHOICE ASSURANCE, INC., d/b/a EMPIRE BLUECROSS BLUESHIELD,

               Defendant.

**MEMORANDUM**
**OPINION & ORDER**

16 Civ. 9105 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff William Gallagher brings this action against Empire HealthChoice Assurance, Inc. ("Empire") under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, challenging Empire's denial of mental health benefits for wilderness therapy provided to his sixteen-year-old daughter "J.G." (Cmplt. (Dkt. No. 5)) Plaintiff alleges that Empire's categorical exclusion of wilderness therapy violates the Mental Health Parity and Addiction Equity Act (the "Parity Act"). (Id. ¶ 16) The Complaint pleads two ERISA-based benefit claims: a claim for plan enforcement under 29 U.S.C. § 1132(a)(1)(B), and a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). (Id. ¶ 27-36)

        Empire has moved to dismiss and to strike Plaintiff's jury demand. (Def. Mot. (Dkt. No. 20) at 1)[1] For the reasons stated below, Empire's motion to dismiss will be granted in part and denied in part, and Empire's motion to strike the jury demand will be granted.

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

## BACKGROUND

I.  **RELEVANT PLAN PROVISIONS**

Plaintiff is an employee of Mount Sinai Health System – a New York City-based hospital and health care company – and receives health insurance benefits through an employer-sponsored health insurance plan (the "Plan"). (Cmplt. (Dkt. No. 5) ¶¶ 2-3, 7) The Plan is administered by Empire – a not-for-profit managed care subsidiary of Anthem, Inc. that administers employer-funded health insurance plans. (Id. ¶¶ 7-8) Under the Plan, Mount Sinai is responsible for benefit payments, and Empire "provides administrative claims payment services only[.]" (Cmplt., Ex. A (Health Plan) (Dkt. No. 5-1) at 3) As claims administrator, Empire has discretionary authority to interpret and apply the Plan's terms in reviewing claims and determining benefit entitlement. (Cmplt. (Dkt. No. 5) ¶ 8) Under ERISA, 29 U.S.C. § 1002(7)-(8), Plaintiff is a Plan participant and J.G. is a Plan beneficiary. (Id. ¶¶ 2, 7)

Under the Plan, Empire is directed to authorize benefits for Covered Services as long as the service sought is "Medically Necessary." (Cmplt., Ex. A (Health Plan) (Dkt. No. 5-1) at 85) The Plan provides that Empire will determine whether a Covered Service is "Medically "Necessary" based on

> Your medical records;
>
> [Empire's] medical policies and clinical guidelines;
>
> Medical opinions of a professional society; peer review committee or other groups of Physicians;
>
> Reports in peer-reviewed medical literature;
>
> Reports and guidelines published by nationally-recognized health care organizations that include supporting scientific data;
>
> Professional standards of safety and effectiveness, which are generally-recognized in the United States for diagnosis, care, or treatment;

2

> The opinion of Health Care Professionals in the generally-recognized health specialty involved;
>
> The opinion of attending Providers, which have credence but do not overrule contrary opinions.

(Id.)

The Plan further provides that "Services will be deemed Medically Necessary only if":

> They are clinically appropriate in terms of type, frequency, extent, site, and duration, and considered effective for Your illness, injury, or disease;
>
> They are required for the direct care and treatment or management of that condition;
>
> Your condition would be adversely affected if the services were not provided;
>
> They are provided in accordance with generally accepted standards of medical practice;
>
> They are not primarily for convenience of You, Your family, or Your Provider;
>
> They are not more costly than an alternative service or sequence of services, that is at least as likely to produce equivalent therapeutic or diagnostic results;
>
> When setting or place of service is part of the review, services that can be safely provided to You in a lower cost setting will not be Medically Necessary if they are performed in a higher cost setting. . . .

(Id. at 85-86)

The Plan's Covered Services include mental health and substance abuse treatments. (Id. at 47) The "Behavioral Healthcare" section of the Plan states that, "[i]n addition to the services listed in <u>Your Benefits At A Glance</u> section, the following mental health care service is covered":

- Electroconvulsive therapy for treatment of mental or behavioral disorders, if precertified by Behavioral Healthcare Management.

3

- Care from psychiatrists, psychologists or licensed clinical social workers, providing psychiatric or psychological services within the scope of their practice, including the diagnosis and treatment of mental and behavioral disorders. Social workers must be licensed by the New York State Education Department or a comparable organization in another state, and have three years of post-degree supervised experience in psychotherapy and an additional three years of post-licensure supervised experience in psychotherapy.

- Treatment in a New York State Health Department-designated Comprehensive Care Center for Eating Disorders pursuant to Article 27-J of the New York State Public Health Law.

- We Cover inpatient mental health care services relating to the diagnosis and treatment of mental, nervous and emotional disorders received at Facilities that provide residential treatment, including room and board charges.

(Id.)

The Your Benefits At A Glance section states that the Plan covers mental health care – and alcohol or substance abuse treatment – on both an outpatient and an inpatient basis. (Id. at 26) The Plan does not specifically mention wilderness therapy. (Cmplt. (Dkt. No. 5) ¶ 10)

Empire makes the initial determination as to a claim for benefits under the Plan, and also is responsible for addressing "Level 1 Appeals." (Id., Ex. A (Health Plan) (Dkt. No. 5-1) at 75-76) "If the outcome of the mandatory first level appeal is adverse to [a Plan participant or beneficiary]," the Plan states that the Plan participant or beneficiary "may be eligible for an independent External Review pursuant to federal law."[2] (Id. at 77) The Plan further provides that "[t]he External Review decision is final and binding on all parties except for any relief available through applicable state laws or ERISA." (Id.)

---

[2] The Plan does not disclose who conducts the External Review, what procedures are involved in that review, or what federal law entitles certain Plan participants to seek an External Review.

With respect to a Plan participant and beneficiary's rights to challenge an adverse benefits determination under ERISA, the Plan states that "[u]nder ERISA, you have the right to have your Plan Administrator review and reconsider your claim. If we deny a claim, wholly or partly, you may appeal our decision [to the Plan Administrator]." (Id. at 81; see also id. at 75) "Under ERISA, the plan 'administrator' is 'the person specifically so designated by the terms of the instrument under which the plan is operated. . . .'" Levi v. McGladrey LLP, No. 12-CV-8787 (ER), 2016 WL 1322442, at *4 (S.D.N.Y. Mar. 31, 2016) (quoting 29 U.S.C. § 1002(16)(A)(i); see also Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 631 (2d Cir. 2008) ("[S]ince Oxford is not 'the person specifically so designated by the terms of the instrument under which the plan is operated,' 29 U.S.C. § 1002(16)(A)(i), it is not a plan 'administrator[.]'")).

Here, Plaintiff does not contend that Empire is the Plan Administrator. (See Pltf. Opp. (Dkt. No. 23) at 23). Indeed, the Plan states that Empire is the claims administrator, and refers to the Plan Administrator as a separate party. (See, e.g., Cmplt., Ex. A (Health Plan) (Dkt. No. 5-1) at 3 ("Empire . . . provides administrative claims payment services only. . . ."); id. at 59 ("Your Plan Administrator will notify Empire to process the enrollment for the covered person."); id. at 86 ("To identify your Plan Administrator, contact your employer or health plan sponsor.")) As discussed below, however, Plaintiff contends that Empire is nonetheless a proper defendant for purposes of his Section 1132(a)(1)(B) claim, because the Plan "effectively provides Empire [with] 'sole and absolute discretion' to make 'final and binding decisions' [regarding benefit claims and appeals]." (Pltf. Opp. (Dkt. No. 23) at 24)

## II. PLAINTIFF'S BENEFITS CLAIM FOR J.G.'S WILDERNESS THERAPY

J.G. has a history of mental health issues, including depression, low self-esteem, suicidal ideation, panic disorder, and drug use. (Id. ¶ 11) In May 2016, after J.G.'s therapist

5

determined that she required intensive, in-patient treatment, J.G.'s parents had her admitted to Evoke Therapy – a mental health service provider in Bend, Oregon that offers wilderness therapy. (Id.) Plaintiff sought coverage for the wilderness therapy under the Plan, but Empire denied Plaintiff's claim in a May 9, 2016 letter. (Id. ¶ 12) Empire's letter denying coverage states that "[t]he requested service(s) are excluded from the member's contract." (Id.)

Plaintiff appealed the denial of benefits, but Empire rejected the appeal in an August 23, 2016 letter. (Id. ¶ 13) By explanation, Empire states that the only services available for mental health treatment are those listed in the four bullet points in the "Behavioral Healthcare" section of the Plan. (Id.) The letter does not address the coverage for outpatient and inpatient skilled nursing and rehabilitation care listed in the Your Benefits At A Glance section of the Plan. (Id.)

On November 23, 2016, Plaintiff filed the instant action against Empire, on behalf of himself and other similarly-situated individuals who are covered under health insurance plans that (1) are administered, underwritten, or insured by Empire; and (2) purport to cover mental health treatment, and whose claims for wilderness therapy coverage have been denied. (Id. ¶ 17) Plaintiff asserts that Empire's blanket exclusion of wilderness therapy violates the Parity Act, because it is a treatment limitation applicable only to mental health benefits. (Id. ¶ 16) The Complaint asserts a claim for enforcement of the Plan under 29 U.S.C. § 1132(a)(1)(B), as well as a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), and demands a jury trial. (Id. ¶¶ 27-36)

Empire has moved to dismiss and to strike the Complaint's jury demand. (Def. Mot. (Dkt. No. 20) at 1) Empire contends that – as a claims administrator without complete discretion to resolve benefits claims – it is not a proper defendant for purposes of a cause of

6

action brought under Section 1132(a)(1)(B). (Def. Br. (Dkt. No. 21) at 5) Empire further contends that the Complaint does not plead sufficient facts to make out a violation of the Parity Act. (Id.)

## DISCUSSION

### I. MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

7

## II. WHETHER EMPIRE IS A PROPER DEFENDANT FOR PURPOSES OF PLAINTIFF'S CLAIM UNDER SECTION 1132(a)(1)(B)

Empire contends that Plaintiff's claim under Section 1132(a)(1)(B) must be dismissed because – as a claims administrator without complete discretion over benefits claims – it cannot be sued under this provision of ERISA. (Def. Br. (Dkt. No. 21) at 10-11) Plaintiff argues, however, that pursuant to New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d 125 (2d Cir. 2015), Empire may be held liable under Section 1132(a)(1)(B), because the Plan "effectively provides Empire [with] 'sole and absolute discretion' to make 'final and binding decisions' [regarding benefit claims and appeals]." (Pltf. Opp. (Dkt. No. 23) at 24).

Prior to the Second Circuit's decision in New York State Psychiatric Ass'n, "the longstanding rule in the Second Circuit was that only a plan administrator or [trustee] could be held liable under [Section 1132(a)(1)(B)]." Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan, 217 F. Supp. 3d 608, 630 (N.D.N.Y. 2016); see also Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989). In New York State Psychiatric Ass'n, the Second Circuit held that, "where the claims administrator has 'sole and absolute discretion' to deny benefits and makes 'final and binding' decisions as to appeals of those denials, the claims administrator exercises total control over claims for benefits and is an appropriate defendant in a [Section 1132(a)(1)(B)] action for benefits." New York State Psychiatric Ass'n, 798 F.3d at 132.

Although the court in New York State Psychiatric Ass'n declined to decide "whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under [Section 1132(a)(1)(B)]," id. at 132 n.5, lower "courts have since held that 'discretion alone is not enough to meet the statutory definition of an ERISA Plan administrator.'" Bushell v. UnitedHealth Grp. Inc., No. 17-CV-2021 (JPO), 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018) (quoting Moses v. Revlon Inc., No. 15-CV-4144 (RJS),

8

2016 WL 4371744, at *3 (S.D.N.Y. Aug. 11, 2016), aff'd, 691 F. App'x 16 (2d Cir. 2017)). In Bushell, for example, the court held that the "conclusory allegation that [the claims administrator] exercised discretion in connection with the administration of [p]laintiff's [p]lan [did] not suffice." Bushell, 2018 WL 1578167, at *8 (internal quotation marks and citations omitted). And in Easter, the court held that a claims administrator was not liable under Section 1132(a)(1)(B) where plan participants could appeal its determinations to the plan administrator for a final decision. Easter, 217 F. Supp. 3d at 630-31. In so holding, the Easter court noted that there is "no governing precedent for holding a claims administrator with less than total control responsible [under Section 1132(a)(1)(B)]." Id. at 631.

Here, as in Easter, Empire is a claims administrator that does not have "total control" over the determination of benefit claims. While Empire makes an initial determination as to a benefit claim and resolves the first appeal concerning a denial of benefits (see Cmplt, Ex. A (Health Plan) (Dkt. No. 5-1) at 75), the Plan states that Plan participants and beneficiaries "have the right to have [their] Plan Administrator review and reconsider [their] claim" if Empire denies the claim "wholly or partly." (Id. at 81) Accordingly, the Plan makes clear that Empire does not make "final and binding decisions as to appeals," which is required for a claims administrator such as Empire to have "total control over claims for benefits." New York State Psychiatric Ass'n, 798 F.3d at 132.

Because "there is no governing precedent for holding a claims administrator with less than total control responsible," Plaintiff's Section 1132(a)(1)(B) claim against Empire must be dismissed.[3] Easter, 217 F. Supp. 3d at 631; see also Biller v. Excellus Health Plan, Inc., No.

---

[3] Plaintiff contends that there is an "an issue of fact not amenable to a conclusive determination at this stage" regarding Empire's control over the appeal process, because "independent review of [Empire's] adverse decisions [requires] Empire's consent . . . ." (Pltf. Opp. (Dkt. No. 23) at

9

3:14-CV-0043 GTS/DEP, 2015 WL 5316129, at *13 (N.D.N.Y. Sept. 11, 2015) (holding that claims administrator was not a proper party for purposes of a Section 1132(a)(1)(B) claim where it "was bound by the determination of an External Appeal Agent").

## III. PLAINTIFF HAS PLAUSIBLY PLED A VIOLATION OF THE PARITY ACT

### A. Statutory and Regulatory Framework

"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 356 (2d Cir. 2016) (citing Coalition for Parity, Inc. v. Sebelius, 709 F. Supp. 2d 10, 13 (D.D.C. 2010)). "Essentially, the Parity Act requires ERISA plans to treat sicknesses of the mind in the same way that they would a broken bone." Munnelly v. Fordham Univ. Faculty, No. 16 CIV. 5632 (PGG), 2018 WL 1628839, at *9 (S.D.N.Y. Mar. 30, 2018) (internal quotation marks and citation omitted). "Although there is no private right of action under the Parity Act, portions of the law are incorporated into ERISA and may be enforced using the civil enforcement provisions in ERISA § 502." Id. (internal quotation marks and citation omitted).

To achieve its statutory objective, the Parity Act "requires group health plans and health insurance issuers to ensure that the financial requirements (deductibles, copays, etc.) and treatment limitations applied to mental health benefits be no more restrictive than the predominant financial requirements and treatment limitations applied to substantially all medical

---

23-24) This assertion directly contradicts the terms of the Plan, however, which explicitly inform Plan participants and beneficiaries that they may appeal Empire's adverse benefit determination to the Plan Administrator. (See Cmplt, Ex. A (Health Plan) (Dkt. No. 5-1) at 81)

10

and surgical benefits covered by the plan or insurance." New York State Psychiatric Ass'n, 798 F.3d at 128 (citing 29 U.S.C. § 1185a(a)(3)(A)). "The Parity Act also prohibits 'separate cost sharing requirements' and 'separate treatment limitations that are only applicable with respect to mental health or substance use disorder benefits.'" Munnelly, 2018 WL 1628839, at *9 (citing 29 U.S.C. § 1185a(a)(3)(A)(i)-(ii)).

Under the Parity Act, "treatment limitation" "includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment.'" C.M. v. Fletcher Allen Health Care, Inc., No. 5:12 Civ. 108, 2013 WL 4453754, at *2 (D. Vt. Apr. 30, 2013) (quoting 29 U.S.C. § 1185a(a)(3)(B)(iii)).

"The regulations promulgated pursuant to the Parity Act expand on this definition by breaking it down into two categories: quantitative treatment limitations and nonquantitative treatment limitations." Bushell, 2018 WL 1578167, at *4. "Quantitative limitations 'are expressed numerically (such as 50 outpatient visits per year).'" Id. (quoting 29 C.F.R. § 2590.712(a)). "Nonquantitative treatment limitations . . . 'otherwise limit the scope or duration of benefits for treatment,'" id. (quoting 29 C.F.R. § 2590.712(a)), and "include '[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided.'" Id. (quoting 29 C.F.R. § 2590.712(c)).

With respect to non-quantitative limitations, the Department of Labor's regulations mandate that "any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health . . . benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other facts used in applying the limitation with respect to medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(4)(i). The

11

regulations list six classifications: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. 29 C.F.R. § 2590.712(c)(2)(ii)(A).

### B. Analysis

Plaintiff contends that Empire's denial of benefits for J.G.'s wilderness therapy violates the Parity Act. (Pltf. Opp. (Dkt. No. 23) at 6) To state a Parity Act violation, a plaintiff must allege that

> (1) the insurance plan is of the type covered by the Parity Act; (2) the insurance plan provides both medical benefits and mental-health benefits; (3) the plan has a treatment limitation – either quantitative or nonquantitative – for one of those benefits that is more restrictive for mental-health treatment than it is for medical treatment; and (4) the mental-health treatment is in the same classification as the medical treatment to which it is being compared.

Bushell, 2018 WL 1578167, at *5 (citing 29 C.F.R. § 2590.712(c)(i)).

Here, Empire contends that Plaintiff has not pled facts that plausibly make out the third element, because the Complaint does not "identify Plan provisions that create a disparity between medical/surgical treatment and mental health/substance abuse treatment." (Def. Br. (Dkt. No. 21) at 9) Empire also contends that, "to the extent [Plaintiff] argues that there is a lack of parity because the Plan covers intermediate medical/surgical treatment in an outdoor 'wilderness' setting but does not [] cover mental health in this setting, there is simply no support for th[at] proposition in the Plan." (Def. Reply (Dkt. No. 22) at 5-6)

In Vorpahl v. Harvard Pilgrim Health Ins. Co., No. 17 Civ. 10844 (DJC), 2018 WL 3518511 (D. Mass. July 20, 2018), the District of Massachusetts considered whether a categorical exclusion for wilderness therapy programs violates the Parity Act. Vorpahl, 2018 WL 3518511, at *3. The defendant in Vorpahl – like Empire here – moved to dismiss the Parity Act claim, contending that because "the exclusion [] for wilderness programs [wa]s a categorical one

12

(such that wilderness programs for mental health treatment and for medical conditions would both be excluded), [p]laintiffs [had] not plausibly alleged [a] Parity Act [c]laim." Id.

The Vorpahl court denied the motion to dismiss, holding that it was "sufficient to allege, as Plaintiffs ha[d], 'that a mental-health treatment is categorically excluded while a corresponding medical treatment is not' to state a Parity Act claim." Id. (quoting Bushell, 2018 WL 1578167, at *6). The court reasoned that the relevant inquiry was not "whether coverage of both types of treatment would be excluded in [a] wilderness program setting," because plaintiffs' claim "appear[ed] to concern the process and factors by which [the] nonquantitative treatment limitation could even be applied [] to . . . medical/surgical benefits." Id. The Vorpahl court further observed that "[t]here is [] a growing body of cases that have addressed the assertion of similar claims," from which a consensus is emerging that "a plan that cover[s] skilled nursing facilities but not residential treatment programs violate[s] the Parity Act." Id.; see also Danny P. v. Catholic Health Initiatives, 891 F.3d 1155, 1158 (9th Cir. 2018) ("[T]he Parity Act . . . precludes [a] [p]lan from deciding . . . that it will provide room and board reimbursement at licensed skilled nursing facilities for medical and surgical patients, but will not provide room and board reimbursement at residential treatment facilities for mental health patients."); Munnelly, 2018 WL 1628839, at *14 ("Because (1) residential treatment services are only provided to treat mental health conditions, and (2) there is no corresponding limitation on analogous treatment for medical/surgical conditions, the Plan's residential treatment services exclusion runs afoul of the Parity Act's express requirements."); B.D. v. Blue Cross Blue Shield of Georgia, No. 1:16-CV-00099-DN, 2018 WL 671213, at *5, 10 (D. Utah Jan. 31, 2018) (holding that health insurer violated the Parity Act by denying coverage for mental health treatment at residential treatment center where the plan covered "skilled nursing facilities, rehabilitation services and hospice

13

care[,] and excluded coverage for mental health services at a residential treatment facility, unless it was required by law," because "a skilled nursing facility is analogous to a residential treatment facility").

In A.Z. by & through E.Z. v. Regence Blueshield, No. C17-1292 TSZ, 2018 WL 3769810 (W.D. Wash. Aug. 9, 2018), the court likewise held that "alleg[ing] that [the defendant] has categorically denied . . . coverage for medically necessary services at outdoor/wilderness behavioral healthcare programs . . . is enough to state a Parity Act violation for purposes of resisting a motion to dismiss." A.Z., 2018 WL 3769810, at *10 (internal citations omitted). In so holding, the court agreed with the court in Vorpahl that "such a categorical exclusion is itself a form of 'process' falling within 29 C.F.R. § 2590.712(c)(4)(i) that qualifies as a discriminatory limitation." Id. (citing Bushell, 2018 WL 1578167, at *6; Vorpahl, 2018 WL 3518511, at *3).

In A.H. by & through G.H. v. Microsoft Corp. Welfare Plan, No. C17-1889-JCC, 2018 WL 2684387 (W.D. Wash. June 5, 2018), however, the court dismissed a Parity Act claim premised on a categorical wilderness therapy exclusion. A.H., 2018 WL 2684387, at *6-7. The court granted dismissal because plaintiff had not "point[ed] to [something] in the Plan or the administrative record that show[ed] the wilderness program exclusion [wa]s only applied to mental health treatment." Id. at *7.

This Court rejects A.H. and finds the reasoning in Vorpahl and A.Z. persuasive. At least at the motion to dismiss stage, the relevant comparison is not whether benefits for wilderness therapy are available for medical/surgical patients, but rather whether the Plan has chosen to provide benefits for skilled nursing facilities and rehabilitation centers for medical/surgical patients, but chosen to deny benefits to those with mental health conditions who seek coverage for a residential treatment center offering wilderness therapy. To impose a higher

pleading standard would likely undermine the statutory purpose of the Parity Act. See Bushell, 2018 WL 1578167, at *6 (noting that the nature of non-quantitative treatment limitations claims "counsels against a rigid pleading standard," because application of such a standard "would likely create a serious obstacle to meritorious Parity Act claims"); Natalie V. v. Health Care Serv. Corp., No. 15 C 09174, 2016 WL 4765709, at *8-9 (N.D. Ill. Sept. 13, 2016) (denying motion to dismiss Parity Act claim challenging blanket ban on residential treatment centers for mental illness). Moreover, as the Vorpahl court noted, given that it is not apparent how a categorical wilderness therapy exclusion "could even be applied [] to . . . medical/surgical benefits," applying such a standard at the pleading stage will likely lead to a nonsensical result that is antithetical to the statutory purpose of the Parity Act.[4] Vorpahl, 2018 WL 3518511, at *3.

Here, Plaintiff has alleged that Empire's "blanket exclusion for services rendered at wilderness treatment centers is a separate treatment limitation applicable only to mental health benefits" (Cmplt. (Dkt. No. 5) ¶ 16), and Plaintiff has identified skilled nursing and rehabilitation facilities as the relevant analogue in the medical/surgical context.[5] (Pltf. Opp. (Dkt. No. 23) at

---

[4] Welp v. Cigna Health and Life Insurance Company, No. 17 Civ. 80237 (DMM), 2017 WL 3263138 (S.D. Fla. July 20, 2017) – the only case cited by Empire (see Def. Br. (Dkt. No. 21) at 8-9) – is inapposite, because that case does not involve a categorical exclusion of wilderness therapy. Welp, 2017 WL 3263138, at *5 ("[Plaintiff] mischaracterizes what undisputed documents show to be a mere application of generalized criteria[,] [rather than] a 'blanket exclusion for services at wilderness treatment centers.' The notion of a 'blanket exclusion' has the ring of a 'limitation' within the meaning of the Act. But closer inspection shows this to be illusory.").

[5] Empire argues that this Court should disregard Plaintiff's assertion that "the relevant analogue in the medical/surgical context is treatment at rehabilitation hospitals or skilled nursing facilities," because that allegation is "not contained in the Complaint." (Def. Reply. (Dkt. No. 22) at 5) But the Complaint alleges that the Parity Act violation here is the same as that alleged in Joseph & Gail F. v. Sinclair Servs. Co., 2016 U.S. Dist. LEXIS 8644 (D. Utah Jan. 22, 2016), which alleged that benefits were provided for residential services addressing medical and surgical conditions but denied for residential services addressing mental health conditions. (See Cmplt. (Dkt. No. 5) ¶ 15) In any event, "[d]ismissal of a complaint . . . is not warranted for [an]

15

19 ("Empire categorically denies coverage for medically necessary services provided by outdoor behavioral healthcare programs . . . [while] expressly authoriz[ing] equivalent medical and surgical services provided at rehabilitation and skilled nursing facilities.") (citing Cmplt., Ex. A (Health Plan) (Dkt. No. 5-1) at 25)) The Court concludes that the Complaint's allegations are sufficient at the pleading stage to establish the third element of a Parity Act violation. See Vorpahl, 2018 WL 3518511, at *3 (denying motion to dismiss where plaintiff alleged that "the analogous medical/surgical treatment . . . [wa]s offered in other residential settings, like skilled nursing facilities or rehabilitation hospitals"); cf. Natalie V., 2016 WL 4765709, at *9 (denying motion to dismiss plaintiff's claim that categorical exclusion for residential treatment centers violated Parity Act where plaintiff's plan "covered services received at skilled nursing facilities, yet categorically excluded coverage for mental health benefits at residential treatment centers") (internal citations omitted). Accordingly, Empire's motion to dismiss Plaintiff's breach of fiduciary duty claim will be denied.

## IV.   MOTION TO STRIKE JURY DEMAND

Empire has moved to strike Plaintiff's jury demand, arguing that there is no right to a jury trial in an action to recover benefits under an ERISA plan. (Def. Br. (Dkt. No. 21) at 5) "The Second Circuit has repeatedly held that 'cases involving ERISA benefits are inherently equitable in nature . . . and that no right to a jury trial attaches to such claims,'" Chau v. Hartford Life Ins. Co., 167 F. Supp. 3d 564, 573 (S.D.N.Y. 2016) (quoting DeFelice v. Am. Int'l Life Assurance Co. of New York, 112 F.3d 61, 64 (1997)); see also O'Hara v. National Union Fire Ins. Co., 642 F.3d 110, 116 (2d Cir. 2011) ("[T]here is no right to a jury trial in a suit brought to

---

'imperfect statement of the legal theory supporting the claim asserted.'" Vorpahl, 2018 WL 3518511, at *2 (quoting Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346 (2014)).

recover ERISA benefits."); Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003) ("[T]here is no right to a jury trial under ERISA."), and courts in this District regularly grant motions to strike jury demands in ERISA cases. See, e.g., Chau, 167 F. Supp. 3d at 573; Salisbury v. Prudential Insurance Co. of Am., No. 15 Civ. 9799 (AJN), 2016 WL 3842611, at *2 (S.D.N.Y. July 11, 2016); Murphy v. First Unum Life Ins. Co., No. 15 Civ. 820 (SJF) (SIL), 2016 WL 526243, at *4 (E.D.N.Y. Feb. 9, 2016). Accordingly, Empire's motion to strike the Complaint's jury demand will be granted.

## CONCLUSION

For the reasons stated above, Empire's motion to dismiss is granted as to Count 1, but denied as to Count 2. Empire's motion to strike the Complaint's jury demand is granted. The Clerk of the Court is directed to terminate the motion. (Dkt. No. 20)

Dated: New York, New York
September 11, 2018

SO ORDERED.

_Paul Gardephe_
Paul G. Gardephe
United States District Judge